YELVERTON, Judge.
Plaintiffs, the Town of Urania and Sewerage District No. 1 of the Town of Urania, brought this action against the defendant, M.P. Dumesnil Construction Company, Inc., seeking damages, or alternatively reduction in the purchase price, for defects resulting from alleged improper workmanship in the construction of a sewage treatment plant. Dumesnil reconvened for payment of the unpaid balance of the contract price, and also filed a third party demand against Pollution Control, Inc., the manufacturer of the component parts of the treatment plant, and Southern Consultants, the engineers for the project. Pollution Control filed a third party demand against Dumesnil seeking payment of the unpaid balance of the purchase price of the machinery, and interest. The Town of Urania had withheld $26,978.37 of the contract amount, and the trial court found that the town was entitled to a reduction in the cost of only $11,315. Accordingly, the trial court awarded judgment for the difference in favor of Dumesnil against the town and the sewerage district for $15,663.37, plus legal interest. The trial court also awarded judgment in favor of Pollution Control, Inc. against Dumesnil for $5,241, together with interest as provided by the contract. All other claims were denied. No judgment was rendered affecting Continental Casualty Company, Dumesnil’s insurer. From these judgments, the town, the sewerage district, and Dumesnil have appealed.
The issues raised by the town and the sewerage district are 1) whether the trial court erred in not sustaining their exception of no right and/or no cause of action (to Dumesnil’s reconventional demand); and 2) whether the trial court erred in finding Dumesnil was entitled to any money under the terms of the contract.
The issues raised by Dumesnil’s appeal are 1) whether the trial court erred in concluding that the plaintiffs were entitled to a reduction in the contract price, 2) whether the trial court erred in denying the third party demands of Dumesnil against Pollution Control, Inc., and Southern Consultants, and 3) whether the trial court erred in awarding interest other than the legal rate on the judgment in favor of Pollution Control.

Plaintiffs’ No Right and/or No Cause of Action

Plaintiffs’ .exception of no right or no cause of action rested on the argument that under the terms of their contract, Du-mesnil had no right to seek the balance of the contract price until it paid Pollution Control the remainder of the purchase price for the machinery. We disagree.
Under Item G, Section 19 of the contract, the entire balance due to the contractor was to be paid within 30 days of completion and acceptance of the work, except for sums which were lawfully retained by the owner. Under Section 19.5 the owner *891 could request the contractor to furnish satisfactory evidence that all sums owed suppliers of equipment had been paid, discharged, or waived. If the contractor failed to provide such evidence the owner might, “after having notified the CONTRACTOR, either pay the unpaid bills or withhold from the CONTRACTOR’S unpaid compensation a sum of money deemed reasonably sufficient to pay any and all such lawful claims ...”
On March 6, 1978, the Town of Urania executed a Certificate of Substantial Completion accepting the project as completed in accordance with the terms of the contract. Therefore, under the provisions of the contract the unpaid balance owed the contractor was due 30 days after that date. The only request made by the Town of Urania to the contractor was that the contractor provide the town with a lien free certificate. The contractor provided the certificate. The record does not indicate that the town asked the contractor to give it evidence that Pollution Control had been paid. It is thus apparent that the town was not relying on Section 19.5 of the contract in withholding the balance and that section is therefore not applicable here. Even if Section 19.5 were applicable in the present case, the town could have withheld only the balance owed to Pollution Control by Dumesnil ($5,241). It is clear, however, that the town withheld payment of the balance of the contract because of alleged improper workmanship and not because the contractor failed to pay the supplier.
For these reasons we find that the unpaid balance under the contract was due 30 days after the date of acceptance of the project. Therefore, Dumesnil’s reconven-tional demand stated a cause of action and Dumesnil had the right to seek payment of the unpaid balance. The exceptions were properly overruled.

The Contract Dispute

The plaintiffs also argue that the trial court erred in finding Dumesnil was entitled to any more money under the terms of the contract. Although the evidence is clear that the Town owed a balance of $26,978.37, the plaintiffs argue that the trial court erred in not concluding that the additional amount of $38,000 which the town spent renovating and repairing the plant was the result of Dumesnil’s improper construction of the plant.
Dumesnil, on the other hand, argues that the trial court erred in concluding that the plaintiffs were entitled to any reduction in price due to improper workmanship.
The trial judge who decided this case wrote excellent reasons for judgment regarding the contract dispute. After a careful study of the record, the exhibits, and particularly the lengthy contract, we find the trial court’s findings are correct and his resolution of the case is proper. We adopt the trial court’s reasons for judgment as part of our opinion in this case. We set forth those reasons as follows:
“This is a contract dispute principally between the Town of Urania, Louisiana and Sewerage District Number One of the Town of Urania, plaintiffs, and the M.P. Dumesnil Construction Company, Inc., defendant. Also parties are Southern Consulting, Inc., and Pollution Control, Inc. The parties were all involved in the construction of a sewer system and sewerage treatment plant for the plaintiffs, hereinafter referred to as Urania. Southern Consulting, Inc., (SCI) is an engineering firm and designed the system. Pollution Control, Inc., (PCI) manufactured some component equipment for the project and the M.P. Du-mesnil Company, Inc., (Dumesnil) built the treatment plant. The overall project cost approximately $348,000.00, most of which has been paid. Urania held back $26,978.37 and contended that it was entitled to a $100,000.00 reduction in price because of deficiencies in the work done by Dumesnil and in the PCI equipment. PCI contends that Dumesnil owes it a $5,241.00 balance for the equipment it furnished which had an overall cost of $96,025.36. A variety of issues were litigated at the trial of this case.
*892 “Inherent in the overall dispute is whether the subject plant was so deficient that its inadequacies caused a need to reconstruct the whole treatment plant. Urania did reconstruct much of the plant so the costs involved in the revised plant have been discussed at length in the testimony. The revisions cost about $38,-000.00. Urania’s engineers from SCI explained that they and Urania were close to seeking bids on a lagoon type treatment system when Federal Environmental Protection Agency representatives changed their position and indicated a lagoon system could not be approved. Without such approval, financing could not be obtained. Therefore, SCI proposed a mechanical system that the EPA would approve. Acting under guidelines established by the financing sources and public health agencies, Urania advertised for bids. Dumesnil’s bid was accepted and the subject system was built. Soon after completion, problems developed and before they were rectified, the EPA announced that Urania could have a lagoon system. The plant was redone in accord with the ‘new’ guidelines and is operational. The engineers explained that they believed all along that a simpler system was needed because small municipal operators like Urania are seldom able to provide the constant and aggressive maintenance needed for a mechanical system such as was built by Dumes-nil.
“I find that most of the system built by Dumesnil worked and the town charged its customers for service from the time the system became operational. While a new plant was built, it was not completely made necessary by the deficiencies in the plant equipment. The changes were simply much more practical to operate under the revised EPA guidelines, the decreased maintenance needs, and the Dumesnil-PCA plant could not cope with the unanticipated ‘septic’ or acid problem.
“A second issue focused on whether or not a ‘lien free certificate’ was submitted when due. The evidence clearly demonstrates that under the contract the certificate could have been sent to Urania or to SCI and that it was sent to SCI. Furthermore, no liens were filed that would justify Urania’s refusal to complete payments. The dispute between PCI and Dumesnil, although unresolved, did not constitute legal justification for Urania’s refusal to complete making payments to Dumesnil.
“A third issue relates to whether Du-mesnil built the treatment plant in accord with Urania’s specifications. The evidence establishes that bids were sought for equipment identified as ‘Smith and Lovelace’ or its equivalent. Dumesnil proposed to install PCI équipment. Ultimately, SCI approved the PCI equipment and the contract was accepted by Urania. The evidence demonstrates that the PCI equipment called for was installed by Dumesnil. The items in dispute will be considered individually, but the equipment generally conformed to the specifications approved by SCI. The primary dispute centers on specific items said to be defective being a skimming well, a grit remover, a comminutor, a flow meter, handrails and painting.
“The skimming well settled soon after construction and after it became operational. The evidence clearly established that it was not leveled and that the cost of repair was about $200.00. Urania is entitled to a $200.00 reduction in price from Dumesnil for this item.
“The sensory flow meter is a paper recording device. The mayor of Urania testified that it never did work. Mr. Dumesnil testified that it was located where it was supposed to be located and that it worked satisfactorily in late 1978. Mr. Lunardini testified that there had been a problem with it but it was fixed after August of 1978 and thereafter worked until possibly 1982. It was not included in a demand for warranty work requested in late 1978. The evidence does not support a conclusion that Urania is entitled to a reduction in price for this item.
*893 “The comminutor is a machine intended to grind up sewerage entering the plant. Such machines are common to treatment systems of the subject type. One problem had to do with the original machine being equipped with an undersized motor. This was noticed and a ½ h.p. motor called for in the specifications was installed by Dumesnil. There were other problems caused by the acidity of the effluent being treated which was much more septic or corrosive than anticipated. The machine, however, conformed to the contract specifications. The operational problems were caused by the plaintiffs’ failure to provide adequate cleaning on a regular basis which was essential to continued normal operation. Urania is not entitled to a reduction in price for this item.
“The grit remover is a machine intended to remove bigger items from the flow into the plant before the effluent reached the comminutor. Mayor Bradford testified that it never worked. The engineers explained that SCI originally intended to install a piston type unit, but they nevertheless approved the PCI unit which was an auger type device. From the time it was first made operational, there were problems getting it to pick up items from the trough in which it rotated. Mr. Du-mesnil testified that it had adjustment screws which corroded out and he thought the corrosive effluent caused the problems. While the machine may have been adversely affected by the corrosive materials flowing through it, the evidence preponderates in favor of a conclusion that the machine was not properly installed being probably at an improper angle. It was never repaired or functional for a sustained period. The cost of this unit was $11,115 and Urania is entitled to a price reduction in that amount for this item.
“The handrails were mentioned by the mayor. He was of the view that they should have been made of a different material because in the ‘new plant’ another material, aluminum, was used and it presented no problem. Apparently the handrails in the subject plant were installed in accord with the SCI approved specifications. The probabilities are that deterioration was caused by the unanticipated corrosion situation.
“The need for corrective painting of two activator units was mentioned on the final demand for performance of warranted services. No evidence shows that it was done and none shows what would have been the cost of repainting these items. The evidence does not show what was the cause of the problem.”
We agree with the trial court’s finding that not all of the renovations and changes to the plant were made necessary by the deficiencies in the plant equipment. We find no manifest error in the trial court’s determination that plaintiffs were entitled to only a $11,315 reduction in price.
Dumesnil argues that the evidence revealed that the grit removal system could be repaired and that therefore the trial court erred in granting a reduction of $11,-155 (the cost of that equipment). However, under Item H, Section SQC-22 of the contract, if any work was found to be defective the contractor was obliged to correct the defective work or replace it with non-defective work. If the contractor failed to correct the work “the OWNER may have the defective work corrected or the rejected work removed and replaced.” In the present case Dumesnil failed to correct the deficiencies in the grit removal system, and the town could have either corrected the defective work or could have rejected the system and have it removed. The town chose to have the system removed. The trial court was correct in reducing the price by the cost of that unit.
Dumesnil makes the legal argument that the acceptance of the work by the town constituted a waiver of the town’s rights with respect to any defects which were either known, obvious or discoverable upon reasonable inspection.
The case of Davidge v. H & H Construction Co., 432 So.2d 393 (La.App. 1st Cir. 1983) addresses that issue:
*894 “An unqualified acceptance of work under a construction contract prevents an owner from recovering the cost of remedying defective work, but acceptance with the understanding that certain defects or deficiencies will be corrected will not bar recovery. Brouillette v. Consolidated Construction Company of Florida, Inc., 422 So.2d 176 (La.App. 1st Cir.1982); Hemenway Company, Inc. v. Bartex, Inc. of Texas, 373 So.2d 1356 (La.App. 1st Cir.), writ denied, 376 So.2d 1272 (La.1979).”
The town accepted the project as completed in accordance with the terms of the contract on March 6, 1978. However, under the terms of the contract this was not an unqualified acceptance of the project. The contract provided for a one year correction period for any work found to be defective. The town’s consulting engineers notified Dumesnil on August 28, 1978, of the problems with the grit removal unit. Furthermore, the original plans and specifications called for a grit removal unit operated by a piston. The grit removal unit submitted by Dumesnil was an auger type unit. The town approved the unit only on the assurances of Dumesnil that the auger unit would operate properly. Considering the one year warranty period and the assurances made by Dumesnil, the trial court did not err in finding that plaintiffs’ acceptance did not bar their claim for a reduction in price. See also Brouillette v. Consolidated Construction Company of Florida, Inc., 422 So.2d 176 (La.App. 1st Cir.1982).
Dumesnil additionally argues that LSA-R.S. 9:2771, which provides that no contractor shall be liable for defects in any work constructed if he did the work according to plans or specifications furnished to him which he did not make or cause to be made, or if the defect was due to any fault or insufficiency of the plans and specifications, is applicable to the present case. We disagree.
Dumesnil assured the town that the auger type grit removal unit (different from the specifications in the original contract) would work properly. The unit never functioned properly. The trial court found that Dumesnil improperly installed the unit at the wrong angle. We find no manifest error in this finding. For this reason R.S. 9:2771 does not apply.

Dumesnil’s Third Party Demands

Dumesnil contends that the trial court erred in denying its third party demands against Pollution Control and Southern Consultants.
Pollution Control was the manufacturer of the equipment for the treatment plant. No evidence was presented by Du-mesnil to show that the equipment failed to function due to a defect in its design or manufacture. The trial court determined that the grit removal unit did not function due to its improper installation. The trial court did not err in denying Dumesnil’s third party demand against Pollution Control.
Dumesnil’s third party demand against Southern Consultants, the town’s consulting engineers for the project, was based on the allegations that the engineers improperly designed the system, and that they should therefore be held liable under an implied warranty as to the sufficiency of the plans and specifications.
The evidence does not support these allegations. Robert Lunardini, owner of Southern Consultants and the town’s engineer for the project, testified that the original plans and specifications called for a piston type grit removal system, and that Dumesnil submitted an auger type system and assured the town that the system would work properly. Mr. Lunardini stated further that he did not prepare any plans for the Pollution Control equipment or give any specifications to the contractor on how to install the equipment. The trial court did not err in denying Dumesnil’s third party demand against Southern Consultants.

*895
The Interest Award to Pollution Control

The trial court found that Pollution Control proved its claim against Dumesnil for an unpaid balance of $5,241, and also determined that the agreement provided for interest at one and one-half percent per month. The judgment awarded interest as provided under the agreement rather than legal interest. Dumesnil argues that this was error. We find this was correct.
The original proposal back on March 28, 1977, which Pollution Control submitted to Dumesnil for the sale of the equipment, contained the following provision:
“In the event of delinquency, Customer shall pay interest at the rate of one and one-half per cent (1V2%) per month on the unpaid balance. After 60 days of delinquency or 90 days from date of invoice. Customer agrees to sign a promissory note, for the unpaid balance. Customer authorizes Pollution Control, Inc. to execute and file on its behalf a financing statement to conform to the Uniform Commercial Code in those public offices deemed necessary.”
On March 30, 1977, the parties executed a purchase agreement for the equipment. That agreement contained the following provision:
“In accordance with our Proposal # FE-19 dated March 28, 1977 this agreement restates and specifically covers the following provisions as to the terms and conditions as contained in the proposal referred to above. All other terms and conditions of the above proposal remain in full force and effect.”
The provision regarding interest on delinquent accounts was part of the proposal that remained in full force and effect.
The trial court was right in enforcing the contract provision providing for interest of one and one-half percent per month.
For the above reasons the judgment of the trial court is affirmed. The costs of this appeal will be paid one-half by the town and the sewerage district, and one-half by Dumesnil.
AFFIRMED.